IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER MOORE<br><br>    Petitioner,<br><br> v.<br><br>CHAD WAKEFIELD, *et al.*,<br><br>    Respondents. | CIVIL ACTION NO. 19-576 |

# MEMORANDUM OPINION

**Rufe, J.**                                  **March 29, 2022**

  Petitioner Christopher Moore, proceeding *pro se*, objects to the Report and Recommendation ("R&R") of Magistrate Judge Elizabeth Hey that the Court deny the petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Upon consideration of the record and of the objections in this case, the Court will overrule the objections and approve and adopt the R&R.[1]

**I. BACKGROUND**

  On November 21, 2009, decedent Marlena Green and DeAndre Williams planned a drug sale to Jeffrey Perry. Williams drove Green to the location of the transaction and upon arrival, Perry entered the back seat of Williams's parked vehicle. Shortly thereafter, an individual the prosecution maintained was Petitioner approached the passenger side of the vehicle and pointed a gun in the window. Williams attempted to pull out from the parking spot and Petitioner fired shots as the vehicle started to pull away. Green attempted to duck but she was struck by a bullet in the back of her head. Video surveillance footage was recovered from the area showing

---

[1] The R&R set forth a detailed history and analysis of the case, which will not be repeated here. Familiarity with the R&R is assumed.

Petitioner walking towards Williams's vehicle just before shots were fired. After the shooting, the video showed Petitioner running to a vehicle belonging to Michael Primus. Upon Petitioner's arrest, Petitioner gave an incriminating statement to the police, describing his role in the robbery and murder.

Petitioner's first trial ended in a hung jury on April 2, 2012.[2] In October 2012, Petitioner was acquitted by a jury of first-degree murder and found guilty of charges including second-degree murder, robbery, and criminal conspiracy.[3] The same attorney represented Petitioner at both trials and on direct appeal. On June 4, 2014, the Pennsylvania Superior Court affirmed the judgment of sentence of life imprisonment without the possibility of parole,[4] and on October 29, 2014, the Pennsylvania Supreme Court denied Moore's petition for allowance of appeal.[5] Petitioner's conviction became final on January 27, 2015.

Petitioner then filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act (PCRA) on September 24, 2015. Counsel was appointed, who later amended the petition to challenge the sentence for robbery but found no merit in Petitioner's remaining claims.[6] In response, Petitioner filed a motion for withdrawal of counsel and filed an amended *pro se* PCRA petition. Counsel filed a no-merit letter and moved to withdraw from the case.[7] The PCRA court

---

[2] *Commonwealth v. Moore*, CP-51-CR-0007232-2010, Docket Sheet ("Docket Sheet") (Phila. C.C.P.) (entry dated 4/2/12).

[3] *Commonwealth v. Moore*, No. 2409 EDA 2017, 2018 WL 6176919, at *1 (Pa. Super. Ct. Nov. 27, 2018).

[4] *Commonwealth v. Moore*, No. 821 EDA 2013, Memorandum, 2014 WL 10917039 (Pa. Super. June 4, 2014).

[5] *Commonwealth v. Moore*, No. 325 EAL 2014, Allocatur Docket Sheet (entry dated Oct. 29, 2014) (Pa.).

[6] On May 26, 2017, the PCRA court vacated the robbery conviction. See *Moore*, 2018 WL 6176919, at *1.

[7] R&R at 3. *See Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (allowing appointed counsel in a post-conviction proceeding to withdraw upon the submission of a no-merit letter outlining counsel's assessment that the case lacked merit).

dismissed Petitioner's amended PCRA petition, rejecting the claims on the merits.[8] On appeal, the Pennsylvania Superior Court denied relief on the six claims presented in the PCRA court, deemed waived several claims that were not presented to the PCRA court, and deemed waived five claims of ineffective assistance of PCRA counsel because Petitioner had not presented them in the PCRA court in response to Counsel's *Finley* letter or the notice of intent to dismiss.[9] Petitioner did not seek review in the Pennsylvania Supreme Court.

Petitioner then filed a timely petition in this Court. The petition raised 24 claims.[10] In Petitioner's reply brief, he withdrew eight claims as without merit, and withdrew another five

---

[8] *Commonwealth v. Moore*, CP-51-CR-0007232-2010, Order (Phila. C.C.P. June 27, 2017); R&R at 4.

[9] *Moore*, 2018 WL 6176919, at *3; R&R at 5–6.

[10] Summarized, the claims are:

1. Counsel failed to conduct an adequate pre-trial investigation, present an adequate trial strategy including failing to pursue an "other suspect defense."
2. Counsel failed to investigate or object to the dismissal of juror #7 without a thorough colloquy.
3. Counsel failed to impeach Detective Gaul's testimony with his testimony from the first trial, the conflicting testimony of his partner, and evidence relating to the gun box discovered during the search of Michael Primus's vehicle.
4. Counsel failed to conduct an adequate pretrial investigation of and file a motion to suppress Moore's allegedly illegally seized cellphone and cellphone records.
5. Counsel failed to object to, move to strike, and request a curative instruction when the prosecutor asked witness Steven Berry what a snitch was.
6. Counsel failed to object and request a cautionary instruction when Detective Gaul described what the jury was going to see in Commonwealth exhibits 64(a), (b) and (c).
7. Counsel failed to investigate and/or confer with Moore and elicit facts relevant to a defense of actual innocence or mere presence, or ascertain if other defenses were available.
8. Counsel failed to discuss exculpatory evidence during closing argument, including the inconsistent testimony of the medical examiner, a 9mm gun box evidence discovered during the search of Michael Primus's vehicle/residence, testimony of witness Brian Stark concerning the direction the bullet traveled, and the inability of DeAndre Williams to identify Moore.
9. Counsel failed to investigate the out-of-court statements of Michael Primus, which corroborated the description of the perpetrator by DeAndre Williams.
10. Counsel failed to remember Moore's name during a critical stage at trial.
11. Counsel stipulated to Moore's allegedly coerced confession before the jury.
12. Counsel failed to object to the accomplice liability charge requested by the prosecutor.
13. Counsel failed to impeach Officer John Cahill about his statements regarding an identification of Moore.
14. Counsel failed to investigate/consult/hire an expert pathologist.
15. Counsel failed to investigate or question the detectives' failure to perform gunshot residue testing on his jacket upon arrest or investigate numerous inconsistent out-of-court statements given by witness Michael Primus.

3

claims on the basis that he lacks the legal sophistication to properly present them.[11] The Magistrate Judge determined that a sufficient description of these five claims was presented and addressed them in the R&R.[12] Of the remaining claims, two were exhausted (Claims 1 and 24).[13] Petitioner argues that the failure to exhaust the other claims should be excused because PCRA counsel was ineffective.[14]

## II. LEGAL STANDARDS

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a petition "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim– (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

---

16. Counsel failed to impeach the medical examiner with prior inconsistent testimony from the first trial.
17. Counsel failed to properly recount witness Steven Berry's testimony to the jury during closing argument.
18. Counsel failed to competently define circumstantial evidence and recall the evidence during closing argument.
19. Counsel failed to investigate or present exculpatory evidence during the suppression hearing regarding witnesses Brian Stark and the medical examiner.
20. Counsel failed to investigate/consult/hire an expert pathologist at the suppression hearing to refute the Commonwealth's theory of how Moore murdered the decedent.
21. The cumulative error/prejudice arising from the constitutional violations warrants relief.
22. The PCRA court prejudiced Moore by dismissing his PCRA petition based upon "a blatantly biased, unreasonable determination of the actual facts of record" "when it opined that [Moore] was 'captured on camera' committing the crime," and ruling that Moore could not establish prejudice by counsel's acts or omissions.
23. Counsel's trial strategy conflicted with the actual innocence, mere presence strategy Moore wanted to pursue resulting in "an actual conflict of interest/divergent interest."
24. The evidence was insufficient to prove Moore committed the alleged robbery/murder.

Petition [Doc. No. 1]; R&R at 7-8.

[11] R&R at 17–18; Mem. L. Supp. Pet. [Doc. No. 27] at 7.

[12] R&R at 17.

[13] R&R at 18.

[14] The Supreme Court held in *Martinez v. Ryan*, 566 U.S. 1, 14 (2012), that a petitioner "may establish cause [to overcome] a default of an ineffective-assistance claim" if post-conviction counsel did not raise a claim and was therefore "ineffective under [Strickland] standards … [T]he [petitioner] must demonstrate that the claim has some merit." *Id.* at 14.

Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[15] In reviewing an R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[16]

Petitioner's claims of ineffective assistance of counsel are assessed according to the two-prong standard established by the Supreme Court in *Strickland v. Washington*.[17] Under the first prong, the petitioner "must show that counsel's performance was deficient" and the "representation fell below an objective standard of reasonableness."[18] The second prong requires the petitioner to demonstrate that the counsel's "deficient performance prejudiced the defense" to such an extent "as to deprive the defendant of a fair trial."[19] If the petitioner cannot establish the prejudice prong of the ineffectiveness standard, "the claim may be dismissed on that basis alone" and the Court need not address both components of the inquiry.[20]

---

[15] 28 U.S.C. § 2254(d).

[16] 28 U.S.C. § 636(b)(1).

[17] *Strickland*, 466 U.S. at 669.

[18] *Id.* at 687; *Mosley v. Att'y Gen. Pa.*, No. 20-3495, 2022 WL 101932, at *2 (3d Cir. Jan. 11, 2022) (citing *Strickland*, 466 U.S. at 687).

[19] *Strickland*, 466 U.S. at 687.

[20] *Com. v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995) (citing *Strickland*, 466 U.S. at 697).

### III. DISCUSSION

#### A. Merits of Exhausted Claim 24

Claim 24 asserts that "the Commonwealth failed to prove beyond a reasonable doubt that the fatal bullet was in fact discharged by the firearm used during the robbery, and thus, failed to establish beyond a reasonable doubt that the death occurred during the course of the commission of the [robbery]."[21] There was substantial evidence that Green was shot at the scene, including testimony from the driver, Moore's confession that the gun he used had the same type and caliber of bullets removed from the victim, and video evidence.[22] The state court's conclusion that the evidence was sufficient was a reasonable determination of the facts.

#### A. Merits of Exhausted Claim 1

Petitioner argues in Claim 1 that counsel was ineffective for failing to present an adequate trial strategy.[23] To demonstrate counsel was ineffective in its trial strategy, a petitioner "must show either that: (1) the suggested strategy (even if sound) was not in fact motivating counsel or, (2) that the actions could never be considered part of a sound strategy."[24] Petitioner must show that counsel's choices fell below an objective standard of reasonableness.[25] If counsel

---

[21] R&R at 24 (quoting Appellant's Brief, 2013 WL 8292206, at *6). Petitioner states that this claim is above his understanding of criminal law and therefore can be waived. Mem. L. Support Pet. [Doc. No. 27] at 103. The Magistrate Judge chose to analyze the claim based on the sufficient facts available.

[22] R&R at 24-25 (summarizing Superior Court opinion).

[23] Mem. L. Supp. Pet. [Doc. No. 27] at 13. Petitioner also argues in Claim 17 that counsel was ineffective for failing to recount the accurate wording of Mr. Berry's testimony in closing argument. Mem. L. Support Pet. [Doc. No. 27] at 87. The arguments made in Claim 17 are substantially the same as the arguments in Claim 1. For the reasons set forth as to Claim 1, Petitioner does not establish counsel's error prejudiced the outcome of the trial.

[24] *Thomas v. Varner*, 428 F.3d 491, 499 (3d Cir. 2005).

[25] *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000).

"omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," ineffectiveness may be shown.[26]

Petitioner argues that counsel's strategy to pin Mr. Berry as the shooter was flawed because (1) defense counsel misquoted Mr. Berry's testimony and (2) Petitioner's own trial testimony factually contradicted counsel's theory. As the evidence was overwhelming that Petitioner was at the scene, it was objectively reasonable for counsel to advance the theory that Mr. Berry was the shooter as it explained Mr. Berry's familiarity with the details of the crime and his motive in implicating Petitioner.

During cross-examination of Mr. Berry, Petitioner's counsel referred to the preliminary hearing testimony in which Mr. Berry had referred to the girl with the "big butt."[27] In closing argument counsel misspoke or misremembered, stating that Mr. Berry was "worried what the girl is doing with the big bust" and arguing that Mr. Berry would only have known the size of the "young lady's bust…if [Mr. Berry] were standing at the window of that car tapping on it with the gun and fired the shot that killed her."[28] The Magistrate Judge determined that the defense's point that Mr. Berry was in close enough proximity to make out the victim's features came across nonetheless.[29] As counsel also argued that Mr. Berry was in close proximity to the car and tapped on the window of the car, the error was minor and as it likely had no effect on the judgment, it did not prejudice Petitioner.[30]

---

[26] *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 942 (3d Cir. 2019) (internal citation omitted).

[27] N.T. Sept. 25, 2012, at 207.

[28] N.T. Sept. 27, 2012, at 166.

[29] R&R at 53; N.T. Sept. 27, 2012, at 168.

[30] *See Strickland*, 466 U.S. at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.").

Petitioner also claims that counsel's trial strategy to argue that Mr. Berry was the shooter resulted in a conflict of interest with Petitioner's preferred trial strategy of actual innocence and mere presence.[31] Petitioner argues that his testimony as to Mr. Berry's location at the time of the shooting conflicted with the counsel's strategy of placing Mr. Berry as the shooter. Petitioner argues that he testified that he saw Mr. Berry approaching the rear end of the vehicle in which Petitioner was a passenger of at the time of the shooting.[32] However, Petitioner's testimony as to Mr. Berry's whereabouts was not particularly clear: "Then I seen somebody running down the street on the opposite side, and when I looked behind me, I seen somebody, like, walking up and then he took off, started running across the street. I later found out that was Shiz…That's Steven Berry."[33] Petitioner's testimony did not clearly diverge from the counsel's strategy, and Petitioner has not shown prejudice.[34]

Counsel chose a sound strategy based on the significant evidence against Petitioner, including Petitioner's statement admitting his involvement in the crime, video surveillance footage showing Petitioner walking towards the car moments before shots were fired and then fleeing in another vehicle, and witnesses supporting the theory Petitioner was the shooter. As a result, Petitioner has failed to overcome the presumption that counsel was acting strategically and therefore, cannot establish ineffectiveness of counsel under this claim.

---

[31] Mem. L. Supp. Pet. [Doc. No. 27] at 93.

[32] Mem. L. Supp. Pet. [Doc. No. 27] at 94.

[33] N.T. Sept. 27, 20212, at 67. On cross-examination, Petitioner testified that "[w]hen I heard the gunshots, [Mr. Berry], was, like, behind me like he was about to come up to talk to Reyard." N.T., 09/27/12 at 106.

[34] In addition, the trial judge held a full colloquy with Petitioner before he testified and counsel confirmed with the court that she spoke with Petitioner and he wished to exercise his right to testify on his own behalf. N.T., 09/27/12, at 49–54. Petitioner also confirmed with the court during colloquy that he was satisfied with counsel's services and wished to testify. N.T. Sept. 27, 2012, at 53–54.

### B. Merits of Procedurally Defaulted Claims

The R&R concluded that Petitioner procedurally defaulted the remaining claims because Petitioner either presented the claims for the first time in his PCRA appeal, which the Superior Court determined were waived, or Petitioner never presented the claims to state court.[35] Petitioner argues that the default should be excused due to the ineffective assistance of his PCRA counsel.[36] The R&R concluded that these claims were unexhausted and procedurally defaulted because Petitioner never fairly presented the state courts with the specific claims that counsel was ineffective, as outlined below.

<u>Claim 2</u>

Petitioner argues that counsel was ineffective for failing to investigate Juror Number 7's relationship with someone in the courtroom, apparently Petitioner's grandmother.[37] Petitioner argues counsel should have consulted with Petitioner before deciding not to object to the dismissal of the juror and to have thoroughly investigated whether the juror spoke to the other jurors.[38] Counsel did ask if Juror Number 7 had told anyone else of the relationship, and the court officer responded that he had told Juror Number 7 not to say anything to the other jurors.[39] Juror Number 7 followed instructions to inform the court if she recognized anyone during the

---

[35] R&R at 20–23.

[36] "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez*, 566 U.S. at 9. However, "the [petitioner] must demonstrate their underlying ineffective assistance claim is a substantial one, possessing some merit." *Dockery v. United States*, No. 02-4000, 2018 WL 4680232, at *3 (E.D. Pa. Sept. 27, 2018) (internal quotations and citations omitted).

[37] Mem. L. Supp. Pet. [Doc. No. 27] at 34; R&R at 31.

[38] Pet'r's Objections [Doc. No. 32] at 4; R&R at 31.

[39] N.T. Sept. 25, 2012, at 103–04. The jurors already had been instructed not to discuss the case with each other until deliberations. N.T. Sept. 25, 2012, at 19.

proceedings.[40] Whether to dismiss a juror in such circumstances is within the discretion of the trial court, and Petitioner has not shown that counsel's representation fell below the standard of competence or that there was any prejudice.

### Claim 3

Petitioner contends that counsel was ineffective for failing to impeach Detective Gaul and Detective Verrecchio based on conflicting testimony as to Detective Gaul's presence at the scene of Mr. Primus's arrest and evidence relating to a gun box discovered during the search of Mr. Primus's vehicle.[41] Petitioner argues that during the first trial, Detective Gaul testified he did not recover any guns from Mr. Primus's residence or vehicle,[42] but an "Activity Sheet" indicated a gun box was recovered from the vehicle. The Activity Sheet was not an exhibit at the second trial. However, the testimony Petitioner is referring to asks specifically if any "guns" or "firearms" were found; no weapons were listed on the Activity Sheet.[43] The Magistrate Judge correctly determined the counsel's failure to use the evidence did not prejudice the defense.[44] To the extent that the testimony conflicted on minor points, Petitioner has not shown that drawing out these inconsistencies would have altered the result of the second trial.

---

[40] N.T. Sept. 25, 2012, at 23 ("[I]f there is ever a matter you wish to bring to [the judge's] attention … bring it to the attention of one of the Court officers or Court crier.").

[41] Mem. L. Support Pet. [Doc. No. 27] at 39.

[42] N.T., Mar. 28, 2012, at 142–43. Detective Gaul was asked during direct examination, "did you recover any guns or anything from that residence or from the vehicle?" to which he responded "No." N.T. Mar. 28, 2012, at 142.

[43] N.T. Mar. 28, 2012, at 142–43.

[44] R&R at 33.

10

Claim 4

Petitioner argues that counsel was ineffective for failing to conduct a pretrial investigation of and file a motion to suppress Petitioner's cellphone and cellphone records. In this claim, Petitioner emphasizes inconsistencies as to who seized Petitioner's cellphone, citing Detective Cahill's testimony that he did not personally take anything from Petitioner when he was arrested and Detective Gaul's testimony stating he received Petitioner's cellphone from Detective Cahill.[45] Because Petitioner concedes the phone is his and has not sufficiently explained how the exclusion of the cellphone records would have altered the outcome of the trial, he cannot establish ineffective assistance of counsel.[46]

Claim 5

Petitioner provides little detail to this claim, and does not object to the conclusions of the R&R other than to state that counsel should have been appointed.[47]

Claim 6

Petitioner argues that counsel was ineffective for failing to object and request a cautionary instruction when Detective Gaul described what he saw in the surveillance video that the prosecution maintained showed Petitioner approach the car.[48] Petitioner argues that cautionary instructions were given at the first trial, which ended with a hung jury, and infers that such instructions would have led to the same result in the second trial. Counsel (who had also

---

[45] Pet'r's Objections [Doc. No. 32] at 7; N.T., Sept.. 26, 2012 (afternoon), at 40; N.T., Sept. 27, 2012, at 44–45.

[46] Mem. L. Supp. Pet. [Doc. No. 27] at 49–50. Petitioner argues that the records would have shown that he often went to Brookhaven, Pennsylvania, and therefore, counsel should have challenged the prosecution's characterization that he "fled" to Brookhaven. However, the frequency of his visits to Brookhaven had no bearing on the fact that he left town after the shooting, and would not have altered the outcome of the trial.

[47] Pet'r's Objections [Doc. No. 32] at 7-8.

[48] Mem. L. Supp. Pet. [Doc. No. 27] at 51; Pet'r's Objections [Doc. No. 32] at 8-9.

11

represented Petitioner at the first trial) did object several times during the examination, and at one point there was a sidebar discussion (which was not transcribed), after which the Court instructed Detective Gaul, "Wait for the question and answer only that question."[49] Counsel's actions fell within the broad range of competent representation, and there is no basis to conclude that a cautionary instruction would have affected the outcome of the trial.

### Claim 7

Petitioner argues counsel was ineffective for failing to investigate or confer with Petitioner to a defense of actual innocence, mere presence, or other defenses.[50] Repeating arguments made in Claim 1, Petitioner's arguments ultimately return to Petitioner's disagreement with the strategy counsel chose, not the preparation for trial.

Petitioner lays out several different defense theories he believes counsel should have pursued. However, "[t]he relevant question is not whether counsel's choices were strategic, but whether they were reasonable."[51] As explained in Claim 1, in light of the serious evidence weighing against the Petitioner, including Petitioner's inculpatory statement that he was involved in the robbery and murder, the video surveillance of Petitioner walking towards the car just before shots were fired and then running from the vehicle toward an SUV, counsel was reasonable to pursue a defense strategy of attempting to argue that someone else was the shooter.

---

[49] N.T. Sept. 26, 2012 (afternoon) at 20.

[50] Mem. L. Supp. Pet. [Doc. No. 27] at 52; Pet'r's Objections [Doc. No. 32] at 9-11.

[51] *Workman,* 915 F.3d at 943 (internal citation omitted).

Claim 8

Petitioner argues counsel was ineffective for failing to use available exculpatory evidence in the closing argument in order to establish reasonable doubt.[52] The Magistrate Judge concluded that "this was a long shot at best" in light of Petitioner's confession, identification by Mr. Berry, and the incriminating surveillance footage.[53] In his objections, Petitioner argues again that had counsel pursued a different theory it would have resulted in a second hung jury or an acquittal. For the reasons already discussed, the R&R correctly resolved this claim.

Claim 10

Petitioner next argues that counsel was ineffective during Detective Gaul's cross examination where counsel experienced a momentary lapse in ability to recall Petitioner's last name, and confused the time Petitioner arrived at the jail with the time his interview commenced.[54] Petitioner alleges this demonstrates a finding of incompetence. These minor slips in the course of a trial do not constitute ineffective assistance of counsel.

Claim 11

Petitioner argues that counsel was ineffective for stipulating to Petitioner's confession before the jury.[55] During direct examination, the prosecutor extensively questioned Detective Gaul on the interview and statement Petitioner gave upon his arrest, particularly as to every page

---

[52] Mem. L. Supp. Pet. [Doc. No. 27] at 61.

[53] R&R at 41.

[54] Mem. L. Supp. Pet. [Doc. No. 27] at 70. During cross-examination, counsel stated: "You testified that a cellphone was taken from Mister – great. I forgot – Mr. Moore – right in the middle of this, that the cellphone was taken from Mr. Moore at the time he was arrested, correct?" N.T, Sept. 26, 2012 (afternoon), at 76.

[55] Mem. L. Supp. Pet. [Doc. No. 27] at 75.

where Petitioner had signed or initialed the confession.[56] Defense counsel stated that she was willing to stipulate "to all this," which in context meant that Petitioner had signed and initialed the document.[57] The Magistrate Judge presumed that counsel's stipulation was made in an effort to avoid the reading of Petitioner's confession line-by-line and was reasonable under the circumstances.[58] Petitioner argues that counsel's purpose cannot be discerned without a hearing. However, the motion to suppress had been denied, the confession was to be admitted into evidence, and Petitioner in his testimony did not deny that he signed and initialed the document. Petitioner therefore cannot demonstrate prejudice, regardless of counsel's purpose.

### Claim 12

Petitioner argues that counsel was ineffective for failing to object to the accomplice liability charge.[59] Petitioner in his objections states that he is confused about the claim but is certain that something is "fishy" about the Commonwealth arguing that Petitioner shot the victim yet requesting an accomplice liability charge and dismissing the firearms counts.[60] As the R&R explained, the record shows that the Commonwealth stated during the charge conference that "given the amount of testimony that this was a robbery plot that involved multiple individuals, I believe that the jury could reasonably come to the conclusion that the defendant may have played

---

[56] R&R at 47.

[57] R&R at 47.

[58] R&R at 47.

[59] Mem. L. Supp. Pet. [Doc. No. 27] at 82; R&R at 48. Accomplice liability attaches when an individual "who participates in a crime is legally responsible not only for his personal acts, but also for the acts of others committed in furtherance of the conspiracy to commit the crime." *Commonwealth v. Bryant*, 336 A.2d 300, 312-13 (Pa. 1975).

[60] Pet'r's Objections [Doc. No. 32-1] at 12-13.

14

a role other than the actual shooter."[61] The evidence supported the charge, and counsel was not ineffective for failing to object.[62]

### Claim 14

Petitioner argues that counsel was ineffective for failing to investigate, consult, or hire a defense expert to undermine the medical examiner's testimony.[63] "[S]trategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness."[64] As noted in the R&R, counsel thoroughly cross-examined the medical examiner.[65] Contrary to Petitioner's objection, the R&R did not adopt the argument advanced by the Commonwealth that the video showed what happened to the decedent. Instead the R&R concluded that Petitioner did not offer any evidence that an expert would have called into question the conclusions of the medical examiner.[66] Petitioner has not shown that an expert witness was necessary or available, especially as counsel obtained an admission from the medical examiner that he could not say whether the victim was shot by someone in the back seat of the car or from outside the car.[67]

### Claim 23

Petitioner alleges that counsel's trial strategy to argue that Mr. Berry was the shooter resulted in a conflict of interest with Petitioner's preferred trial strategy of actual innocence and

---

[61] R&R at 49 (quoting N.T. Sept. 27, 2012 at 153).

[62] *Werts v. Vaughn*, 228 F.3d 178, 202 (3d Cir. 2000).

[63] Mem. L. Supp. Pet. [Doc. No. 27] at 80.

[64] *Dunn v. Reeves*, 141 S. Ct. 2405, 2410 (2021) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 104 (2011)).

[65] R&R at 49-50.

[66] R&R at 50.

[67] R&R at 50 n.26.

mere presence.[68] To allege ineffective assistance of counsel based on conflict of interest, Petitioner must demonstrate that: (1) counsel actively represented conflicting interests and (2) an actual conflict of interest adversely affected his lawyer's performance.[69] To find an actual conflict of interest, Petitioner's interests must "diverge with respect to a material factual or legal issue or to a course of action … [and] must cause some lapse in representation contrary to defendant's interests but such lapse need not rise to the level of actual prejudice."[70] Petitioner in essence repeats his arguments made in Claims 1 and 7, arguing that he presented a mere presence defense during his testimony which conflicted with counsel's strategy. As discussed in Claim 1, Petitioner does not identify any conflict of interest that would warrant relief on this claim.[71] Where prejudice is established under *Strickland* if a conflict of interest is determined,[72] the mere possibility of a conflict of interest is not enough to establish prejudice.[73] Here, Petitioner does not point to any specific asserted facts that can demonstrate an actual conflict of interest. Therefore, this Court finds Petitioner is not entitled to relief on this claim.

Claim 21

Petitioner argues that the cumulative effect of all of the errors made by trial counsel entitle him to habeas relief. This requires a showing that the effect of the errors when combined was so prejudicial as to have "undermined the fundamental fairness of his trial and denied him

---

[68] Mem. L. Supp. Pet. [Doc. No. 27] at 93.

[69] *Hennessey v. Zimmerman*, 645 F. Supp. 472, 475 (E.D. Pa. 1986) (quoting *United States v. Gambino*, 788 F.2d 938, 951 (3d Cir. 1986)).

[70] *Id.* Moreover, "the presumption of prejudice does not apply [to impugn criminal convictions] unless the conflict is actual." *Id.*

[71] *See Gambino*, 788 F.2d at 951 (3d Cir. 1986).

[72] *Strickland*, 466 U.S. at 692.

[73] *Hennessey*, 645 F. Supp. at 475.

his constitutional right to due process" because the errors "had a substantial and injurious effect or influence in determining the jury's verdict."[74] Petitioner must show the errors created an "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[75] Significant evidence of guilt will make it less likely to meet this high bar.[76] Petitioner has not met the standard, considering the minor nature of the asserted errors and the substantial evidence of guilt.[77]

## IV. CONCLUSION

This Court agrees with the thorough analysis of the issues presented in the R&R, and the Petition will be denied with respect to all claims. No hearing is warranted because Petitioner has not shown how such a hearing would advance his claims beyond the existing facts in the record.[78] Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is not appropriate, as there is no basis for concluding that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."[79] An order will be entered.

---

[74] *Johnson v. Folino*, 735 F. Supp. 2d 225, 247 (E.D. Pa. 2010) (quoting *Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008)).

[75] *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (citation omitted).

[76] *Johnson*, 735 F. Supp. 2d at 247.

[77] Petitioner argues that the fact that his first trial resulted in a hung jury shows that the evidence of guilt was not substantial. However, it is impossible to know whether the jury failed to reach a verdict because some jurors voted to acquit Petitioner or whether the jury was divided as to whether to convict on first-degree, second-degree, or third-degree murder, especially given the undisputed evidence that Petitioner was at the scene.

[78] *See Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000).

[79] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation omitted).